**Ralph C. PEABODY, Plaintiff,**

v.

**ROTAN MOSLE, INC., A SUBSIDIARY OF PAINE WEBBER, and Stewart Tice, Defendants.**

**No. 87-72-Civ-T-15A.**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 29, 1987.

---

Robert Dyer, Duckworth, Allen & Dyer, P.A., Orlando, Fla., for plaintiff.

William D. Palmer, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, Fla., for defendants.

## ORDER

CASTAGNA, District Judge.

This cause is before the Court on plaintiff's application for an order confirming the arbitration award and defendants' motion to vacate. For the reasons set out below the Court finds that the arbitration award must be confirmed.

In 1982 plaintiff Ralph C. Peabody sought investment advice from defendant Rotan Mosle. Mr. Stewart Tice, also a defendant here and a broker with Mosle, advised Peabody to accumulate some 10,000 shares of Bradford National Corporation stock. Mr. Peabody was at first reluctant to invest because he needed money for his home in Sarasota, Florida. However, Mr. Tice, armed with "tips" and other "inside information," convinced Peabody to make the investment, a decision they both soon regretted. For the stock, bought originally at an average price of $24 a share, plummeted in value and was liquidated at about $10 a share.

Not surprisingly, this action followed soon thereafter. Mr. Peabody alleged violations of federal and state securities law, common law fraud, breach of fiduciary duty, negligence and federal and state RICO violations. The action was submitted to arbitration and on October 16, 1986, the arbitrators, by a vote of 2–1, awarded Mr. Peabody compensatory and punitive damages, as well as costs. On January 13, 1987, defendants filed a motion to vacate or modify the award. On February 18, 1987, plaintiff filed a motion to confirm the award of the arbitrators.

Defendants ask this Court to vacate the award pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1–14. Specifically, defendants assert that section 10(a) and (b) of the act requires vacatur. Section 10(a) authorizes a court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." Section 10(b) allows vacatur "where there was evident partiality or corruption in the arbitrators, or either of them." Defendants also assert that the award should be vacated on the grounds that the punitive damage amount was so irrational as to constitute an abuse of the arbitrators' discretion, that the plaintiff used community conscience arguments which resulted in fundamental error, and that the panel exceeded its power in rendering an untimely award. The Court shall examine the defendants' claims in turn.

Defendants first contend that the award was procured through fraud in violation of 9 U.S.C. § 10(a). Defendants' contentions center around an expert witness, Mr. Thomas E. Nix, who testified for the plaintiff concerning the suitability of the investment and other related matters. As things turned out, Mr. Nix perjured himself as to his credentials. This perjury, defendants argue, caused the award to be obtained through fraud, thus requiring vacatur under 9 U.S.C. § 10(a).

■ Judicial review of arbitrators' awards is exceedingly narrow and is normally confined to the broad contours of procedural fairness and arbitral impartiality. *Loveless v. Eastern Airlines Inc.*, 681 F.2d 1272, 1275 (11th Cir.1982). The Court's review is confined to whether it is abundantly clear that the award was obtained through fraud, corruption or undue means. See *Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32 (2nd Cir.1951).

■ An examination of the record establishes that Mr. Nix's perjury did not lead to an award procured through fraud. Mr. Nix's testimony concerned the issue of suit-

ability of the stock, a relatively minor issue. The defendants were able to cross-examine Mr. Nix on this issue and present countervailing expert testimony if they desired. Additionally, to the extent that the suitability issue was important to the award, the arbitrators in post-award findings said Mr. Nix's testimony "did not effect the three attorney-arbitrators who decided independently of [Mr. Nix's testimony] that Bradford National Corporation stock was highly unsuitable for Ralph C. Peabody." In light of these facts, Mr. Nix's perjury did not cause the award to be procured through fraud.

■ Defendants next contend that arbitrator Maguire had a relationship with Mr. Nix which amounted to "evident partiality" in violation of 9 U.S.C. § 10(b). This alleged conflict of interest stems in part from Mr. Nix's relationship with Mr. Maguire's law partner's brother and from the fact that Mr. Maguire rented Mr. Nix an office at one time. This information was available to the defendants before arbitration and the defendants chose not to object to Mr. Maguire at that time. However, new evidence of a conflict arose later and that evidence forms the gravamen of defendants' assertions.

■ The new disclosures were that Mr. Conrad Pitts, the brother of Mr. Maguire's law partner, Neal Pitts, once was Mr. Nix's personal attorney. Additionally, it was disclosed that Mr. Nix did work for the Pitts brothers' mother.

■ Defendants' claim of a conflict of interest raises arbitral impartiality issues and, as such, requires this Court to take a broader and more intrusive review of the award. *Loveless v. Eastern Airlines Inc.,* 681 F.2d at 1275 (11th Cir.1985). Defendants rely principally on *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), *reh. denied,* 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1969), which held, in a plurality opinion, that even the appearance of arbitral impropriety is

enough to violate 9 U.S.C. § 10(b) and vacate an award. Defendants contend that Maguire's failure to disclose the relation between Conrad Pitts and Thomas Nix was a violation of Maguire's duty to reveal potential bias. As such, defendants contend there was an appearance of arbitral impropriety and the award should be vacated.

Defendants reliance on *Commonwealth Coatings* is misplaced. First, the reasoning outlined by the defendants from Justice Black's plurality opinion did not command a majority of the Court. Justice White, in casting the fifth vote, reasoned differently. He said that there must be a substantial relation between the arbitrator and a party before "evident partiality" is established; a trivial relation was not enough to create the appearance of impropriety sufficient to violate 9 U.S.C. § 10(b) *Commonwealth Coatings,* 393 U.S. at 151–52, 89 S.Ct. at 340–41. Here, arbitrator Maguire's relation to Mr. Nix was that of a former client of Maguire's former law partner's brother and the fact that Mr. Nix did some work for Mr. Maguire's former law partner's mother. This relation—thrice removed from Mr. Maguire—is too attenuated, too trivial to create an appearance of impropriety.

Second, and perhaps more important, *Commonwealth Coating* involved an improprietas relation between the arbitrator and a *party.* Here, in contrast, the alleged impropriety stems from a relation between the arbitrator and a non-party expert witness. This distinction renders the per se rule of *Commonwealth Coatings* [1] inapplicable to the present case and further indicates that the alleged improprietas relation between Maguire and Nix was trivial.

Defendant also points to *Middlesex Mutual Insurance Co. v. Levine,* 675 F.2d 1197 (11th Cir.1982), for the argument that a per se rule of vacatur is required where there is even an appearance of impropriety. However, *Middlesex* involved dealings between the arbitrator and a *party,* not a

1. Other courts have taken this narrow view of *Commonwealth Coating. See, e.g., Morelite Construction Corp. v. New York City District Counsel of Carpenters,* 748 F.2d 79 (2nd Cir.1984), *Andros Compania Maritima v. Marc Rich & Co. A.G.,* 579 F.2d 691 (2nd Cir.1978).

witness. Additionally, the strength of the relation was much more substantial in *Middlesex*, where the arbitrator had been involved in adversary litigation with some of the parties. Here the relation was much more attenuated, involving an expert witness who was no more acquainted with the arbitrator than having done work for the arbitrator's former law partner's mother and brother. In sum, defendants have shown only a remote, uncertain and speculative claim of bias, not enough to establish evident partiality and require this Court to vacate. *See Tamari v. Bache Halsey Stuart, Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980).

■ Defendants also seek to vacate on the grounds that in awarding punitive damages, the arbitrators exceeded their authority. Arbitrators derive their authority from the agreement submitted by the parties. *International Association of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir.1981). The parties to an arbitration agreement, however, "are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included" in the submission. *Ormsbee Development Co. v. Grace*, 668 F.2d 1140, 1146 (10th Cir.1982). Thus, a federal court "is to resolve all doubt in favor of the arbitrator's authority to award a particular remedy." *Willoughby Roofing and Supply Co. v. Kajima International, Inc.*, 776 F.2d 269, 270 (11th Cir.1985). Conversely, an arbitration award should be vacated only if it "was rendered in manifest disregard of the law." *Aerojet–General Corp. v. American Arbitration Association*, 478 F.2d 248, 252 (9th Cir.1973).

■ Here the arbitration agreement authorized the panel to fashion any appropriate remedy for any controversy arising out of or related to the investment. This authority included the power to award punitive damages, if the arbitrators' believed such damages were an appropriate remedy. Consequently, this Court is unable to say that awarding punitive damages was in manifest disregard of the law and thus exceeded the broad boundaries of the panel's authority.

■ Defendants also request vacatur on the grounds of improper community conscience arguments and the failure of the panel to submit the award in proper time limit. To the extent that plaintiff employed community conscience arguments, which assertion is arguable at best, the defendants waived that claim by failing to object at the hearing. *See Cook Industries, Inc. v. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107–08 (2nd Cir.1971).

■ As to the eight-day delay in filing the award, the record indicates that this problem arose because of mail and clerical delays. It is difficult to understand how defendants could have possibly been prejudiced by the delay, especially since they did not make a timely objection. The delay was de-minimus, and to vacate on this ground "would visit a harsh and unwarranted penalty upon the plaintiff who was not in any way to blame." *Tomczak v. Erie Insurance Exchange*, 268 F.Supp. 185, 189 (W.D.Pa.1967) (citations omitted). Accordingly, the time delay does not mandate vacatur.

■ Finally, defendants urge that any award of punitive damages in this case should be paid to the Florida General Revenue Fund pursuant to § 768.73(2) of the Florida Statutes. However, since this cause of action arose before July 1, 1986, § 768.73(2) does not apply here. *See Fla. Stat.* § 768.71 (1986).

Based on the foregoing, it is

ORDERED:

1. That plaintiff's motion to file a reply memorandum is granted and the memorandum has been considered.

2. That the defendants' request for oral argument is denied.

3. That defendants' motion to strike plaintiff's reply memorandum is denied.

4. That defendants' motion to vacate or modify arbitration award is denied.

5. That plaintiff's motion to confirm award of arbitrators is granted and said arbitration award is confirmed.