**AUSTIN SOUTH I, LTD., Plaintiff,**

v.

**BARTON–MALOW COMPANY and the Aetna Casualty & Surety Company, Defendants.**

**BARTON–MALOW THATCHER, INC. and Barton–Malow Company, Plaintiffs,**

v.

**Alfred S. AUSTIN, individually and as general partner of Austin South I, Ltd., et al., Defendants.**

**AUSTIN SOUTH I, LTD., Plaintiff,**

v.

**AMERICAN ARBITRATION ASSOCIATION, et al., Defendants.**

Nos. 89–497–CIV–T–22C, 89–980–CIV–T–22B and 91–169–CIV–T–22B.

United States District Court, M.D. Florida, Tampa Division.

June 10, 1992.

Steven Alan Anderson, Anerson & Orcutt, P.A., Tampa, Fla., for Alfred S. Austin and Austin South I, Ltd.

Joseph George Thresher, Dykema, Gossett, Spencer, Goodnow & Trigg, Tampa, Fla., Edward H. Wasson, John D. Sours, Thomas L. McLain, Wasson, Sours & Harris, P.C., Atlanta, Ga., for Barton-Malow Co. and Aetna Cas. & Sur. Co.

## ORDER

CONWAY, District Judge.

THIS CAUSE comes on for consideration of the Magistrate Judge's report and recommendation regarding pending motions in this case which were referred by the District Judge in an order dated March 24, 1992. All parties previously have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to Section 636(b)(1), Title 28, United States Code.

Upon consideration, of the report and recommendation of the Magistrate Judge, all objections thereto timely filed by the parties and upon this court's independent examination of the file, it is determined that the Magistrate Judge's report and recommendation should be adopted.

Accordingly, it is now ORDERED:

(1) that the Magistrate Judge's report and recommendation is adopted and incorporated by reference in this order of the court;

(2) that Austin's Motion To Vacate Arbitration Award (Dkt. 17, Case No. 89–497–CIV–T–22C), Austin's Motion For Evidentiary Hearing (Dkt. 19, Case No. 89–497–CIV–T–22C), Austin's Motion To Vacate Arbitration Award (Dkt. 22, Case No. 89–980–CIV–T–22B), Austin's Motion For Evidentiary Hearing (Dkt. 28, Case No. 89–980–CIV–T–22B) and Austin's Motion To Vacate Arbitration Award (Dkt. 18, Case No. 91–169–CIV–T–22B) are DENIED;

(3) that Barton and BMT's Motion To Confirm Arbitration Award (Dkt. 35, Case No. 89–497–CIV–T–22C) is GRANTED;

(4) that Barton, BMT and Aetna's Motion For Summary Judgment And Dismissal With Prejudice (Dkt. 37, Case No. 89–497–CIV–T–22C) is GRANTED to the extent that the arbitration award is confirmed. The Clerk of Court shall enter judgment against Austin South I, Ltd. and Alfred S. Austin, as general partner of Austin South I, Ltd. in the amount of $311,035.00. All claims by Austin against Barton–Malow Thatcher, Inc., Barton–Malow Company and Aetna Casualty & Surety Company are hereby dismissed. The motion is otherwise DENIED;

(5) that the Request Of Barton–Malow Company and Barton–Malow Thatcher, Inc. To Permit Filing Of Brief In Opposition To Motion To Vacate Arbitration Award In This And Related Cases (Dkt. 25, Case No. 89–497–CIV–T–22C), the Request Of Barton–Malow and Barton–Malow Thatcher, Inc. To Permit Filing Of Brief In Opposition To Motion To Vacate Arbitration Award In This And Related Case (Dkt. 32, Case No. 89–980–CIV–T–22B) and Barton and BMT's Motion For Enlargement Of Time To Permit Filing Of Brief In Opposition (Dkt. 36, Case No. 89–980–CIV–T–22B) are GRANTED;

(6) that Barton, BMT and Aetna's Motion To Strike Portions Of (1) Affidavit Of Alfred S. Austin In Opposition To Motion

For Summary Judgment and (2) Affidavit of Charles W. Pittman In Support Of Motion To Vacate Arbitration Award (Dkt. 61, Case No. 89–497–CIV–T–22C) is DENIED;

(7) that the Motion For Leave To File Reply To Plaintiff's Memorandum Of Law In Opposition To Barton–Malow's Motion For Summary Judgment And Dismissal With Prejudice And Motion To Confirm Arbitration Award (Dkt. 63, Case No. 89–497–CIV–T–22C) and Austin's Motion For Leave To File Response (Dkt. 66, Case No. 89–497–CIV–T–22C) are DENIED;

(8) that Austin's Motion To Consolidate (Dkt. 24, Case No. 89–980–CIV–T–22B) and Austin's Motion To Lift Stay And Reopen Case (Dkt. 26, Case No. 89–980–CIV–T–22B) are DENIED AS MOOT.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of pending motions in this case which were referred by the District Judge in an order dated March 24, 1992. Oral argument was held on April 30, 1992.[1]

### I

Austin South I, Ltd., Austin South II, Ltd., Austin Center South I, Ltd., Austin Center South II, Ltd. (hereinafter collectively referred to as "Austin") are Florida limited partnerships. Alfred S. Austin is the sole general partner of all of these partnerships.

Austin has ownership interests in real property known as "Austin Center South", which is located in Hillsborough County, Florida. On July 19, 1987, Barton–Malow Company ("Barton"), a Michigan corporation, entered into a contract with Austin South I, Ltd. to construct a 12–story office building on the property for the sum of $8,634,179.00. ("Construction Contract") This project was known as "Austin Center South". The Construction Contract was later assigned by Barton to Barton–Malow Thatcher, Inc., a Georgia corporation. ("BMT")

On July 13, 1988, Austin South I, Ltd. terminated the Construction Contract, effective July 20, 1988. BMT filed a mechanic's lien against the project in the amount of $2,121,752.00 on August 11, 1988. An Amended Claim of Lien was filed on October 20, 1988 for $2,176,873.00.

Case No. 89–980–CIV–T–22B was filed by Barton and BMT against Austin and Alfred S. Austin. Count I alleges breach of contract; Count II requests foreclosure of the mechanic's lien pursuant to Chapter 713 of the Florida Statutes; Count III requests an equitable lien against the property; Count IV requests a stay of the action pending arbitration pursuant to the contract. This action was stayed on March 16, 1990 (Dkt.18) pending arbitration.

Case No. 89–497–CIV–T–22C was commenced by Austin South I, Ltd. and Alfred S. Austin in the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County, on March 13, 1989. Defendants Barton and its surety, Aetna Casualty & Surety Co. ("Aetna"), removed the case to federal court on April 11, 1989.

This complaint requests damages for breach of the Construction Contract by Barton relating to alleged defects in the work done by Barton on the Austin Center South project. (Count I) It also alleges breach of the Performance Bond which was issued by Aetna to assure Barton's performance of the work. (Count II) This action was stayed on July 11, 1989 pending arbitration pursuant to the Construction Contract. (Dkt.11)

Both cases proceeded to arbitration. An arbitration award was entered on January 11, 1991 and clarified on April 3, 1991. A

---

1. Austin Center South I, Ltd's Motion To Dismiss (Dkt.9) and the Motion To Dismiss filed by defendants Alfred S. Austin, Austin South I, Ltd., Austin South II, Ltd., Austin Center South I, Ltd., and Austin Center South II, Ltd. (Dkt.11) were withdrawn by counsel for the parties at the hearing held on April 30, 1992, and the parties were directed to answer the complaint within twenty days. Austin's Motion To Compel Production By American Arbitration Association (Dkt.68) was denied as moot in an order dated April 30, 1992.

total of $311,035.00 was awarded to Barton.

Case No. 91–169–CIV–T–22B is an action filed by Austin South I, Ltd. on February 11, 1991 to set aside the arbitration award. The named defendants are the American Arbitration Association, Barton and BMT. There is also a claim for reimbursement from AAA regarding alleged overcharges by AAA in administering the arbitration.

These cases were consolidated by the District Judge in an order dated June 20, 1991. (*See* Case 89–497–CIV–T–15C, Dkt. 30).

## II

Austin has filed essentially identical motions to vacate the arbitration award in all three cases on the grounds of "evident partiality" of one of the arbitrators.[2] Barton has filed a motion to confirm the arbitration award in Case No. 89–497–CIV–T–22C.

## BARTON'S MOTIONS TO FILE ITS MEMORANDUM IN OPPOSITION

Barton inadvertently filed its memorandum in opposition to Austin's motion to vacate the arbitration award in a related case (Case No. 89–979–CIV–T–13C), due to the confusion resulting from multiple related cases involving the same parties. Barton has filed motions for an enlargement of time and for leave to file its memorandum in opposition in the correct cases. These motions should be granted. *See United States ex rel. Robinson v. Bar Ass'n of District of Columbia*, 190 F.2d 664 (D.C.Cir.1951) (appellant's inadvertent filing of a motion for extension of time to file a brief with the District Court, rather than the Court of Appeals, constituted sufficient excusable neglect under rule 6(b) to permit an extension of time to file the motion in the proper court).

**2.** In the motion to vacate, Austin also argues that the award should be vacated pursuant to 9 U.S.C. § 10(d) because it was so imperfectly executed by the arbitrators that a mutual, final and definite award upon the subject matter submitted was not made. However, at the April 30,

## CONFIRMATION OF THE ARBITRATION AWARD

Title 9, United States Code, Section 9 provides, in relevant part, that any party to arbitration may apply to the court for an order confirming an arbitration award within one year after the award is made. The court must confirm the award unless the award is vacated, modified, or corrected under Sections 10 or 11. *See* 9 U.S.C. § 9.

Section 10 enumerates the statutory grounds for vacating an arbitration award, providing that the award may be vacated:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the fights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

"The purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir.1981). There is a national policy favoring arbitration as an expeditious means of resolving disputes, and the Federal Arbitration Act presumes that reviewing courts will confirm arbitration awards. *See generally, Robbins v. Day*, 954 F.2d 679, 682 (11th Cir.1992). Ac-

1992 hearing, Austin's counsel stated that the Clarification of Award dated April 3, 1991 rendered this issue moot, and Austin is no longer seeking to vacate the arbitration award on this ground.

cordingly, the courts' review of the arbitration process is "severely limited." *Id.* at 682.

## I. *Alleged Bias of Mr. Farrell*

Austin states the arbitration award must be vacated pursuant to 9 U.S.C. § 10(b) because one of the arbitrators, Joseph Farrell, was involved in a business dealing with the former chief executive officer ("CEO") of Barton–Malow five years ago. As a result, Austin contends that Mr. Farrell was biased against Austin.

The AAA had previously advised the parties that it had selected three arbitrators, including Mr. Farrell, and these individuals did not know the parties. However, in a letter dated May 16, 1989, the AAA notified the parties that Mr. Farrell had made the following disclosure:

> "I knew Rollie Wilkening, a former CEO of Barton Malow, through AGC. Because of this acquaintanceship my firm joined Barton Malow in preparing a joint venture presentation for the construction of a new hospital facility in the Philadelphia area. This took place about five years ago. The presentation was unsuccessful and since that time I have had no contact with anyone at Barton Malow."

(Case No. 91–169–CIV–T–17B, Dkt.1, Ex.J)

Austin objected to Mr. Farrell's appointment on the grounds of evident partiality. The AAA reviewed the disclosure made by Mr. Farrell, as well as the comments from both of the parties, and determined that Mr. Farrell's appointment should be reaffirmed on June 7, 1989. (Dkt.42, Grafals deposition[3], p. 4, Case No. 89–497–CIV–T–22C).

Austin then filed suit in the Middle District of Florida, requesting that Mr. Farrell be disqualified. (*Austin South I, Ltd. v. American Arbitration Association, et al.,* 89–979–CIV–T–13B) The suit was dismissed without prejudice to Austin to refile an appropriate action after the arbitration award had been entered, since the court could not entertain a challenge to the impartiality of an arbitrator under 9 U.S.C. § 10 prior to that time. Austin states AAA refused to disqualify Mr. Farrell even after this action was filed.

Austin also filed a motion to recuse the arbitrators on November 20, 1989, after commencement of the arbitration proceedings. During the arbitrator's discussions regarding this motion, Mr. Farrell described his relationship with the former CEO of Barton more fully. (Case No. 89–497–CIV–T–22C, Dkt.39, Camden affidavit[4])

In the transcript attached to Mr. Camden's affidavit, Mr. Farrell states:

> My relation with Barton–Malow was very casual. I knew a former chief executive officer, Rolley Wilkenning, who's been retired for five years, through our association at AGC. He called after he retired and said that his former firm was going to bid a hospital job in Philadelphia, which is my hometown, and would we like to joint venture. I said sure. I went to Detroit, their home office. I met with them for four hours, their marketing man and one of their vice-presidents. We put together a format. A week later we met at the airport, took them to the presentation. We made our presentation. I took them back to the airport. We were not successful. None of these people have anything to do with this particular incident. I don't even remember the names of the two guys I dealt with and it was a job that never came through, and that was five years ago. I of course, have since closed my business down, retired, live here. I have no philosophy one way or the other about Barton–Malow. I did know the name, obviously. I don't feel I am biased in any way, shape or form.

(Dkt.39, Ex.E)

Austin's motion and supporting affidavits do not contradict Mr. Farrell's statement of facts regarding the attempted joint

**3.** Rene Grafals is the Regional Vice–President for the Miami Office of the American Arbitration Association.

**4.** William M. Camden is a Construction Manager for Barton and served as Barton's representative during the arbitration proceedings.

venture involving Mr. Wilkenning, nor has Austin provided any facts which would suggest that there was any subsequent contacts or an ongoing relationship between Mr. Farrell and any individual associated with Barton–Malow.

Austin states that *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) requires that an arbitrator not only be unbiased, but also that he avoid even "the appearance of bias." *Id.* at 150, 89 S.Ct. at 340.

In *Commonwealth Coatings*, an arbitrator failed to disclose that he had earned approximately $12,000 in fees by providing services sporadically over a period of four to five years to one of the parties and that he had rendered services on some of the projects which were involved in the dispute. The lower courts refused to vacate the arbitration award, and the Supreme Court reversed.

The plurality opinion in *Commonwealth Coatings*, authored by Justice Black, found that the arbitrator's failure to disclose this relationship required that the arbitration award be set aside. The opinion also stated that arbitrators "not only must be unbiased but also must avoid even the appearance of bias." *Id.* at 150, 89 S.Ct. at 340.

However, the concurring opinion in *Commonwealth Coatings* of Justice White, which was joined in by Justice Marshall, states that "... it is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed." *Id.* at 151–152, 89 S.Ct. at 340–341. Justice White cautioned that "(t)he Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function." *Id.* at 150, 89 S.Ct. at 340.

In a plurality opinion, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ..." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citation omitted). *See also Martin v. Dugger*, 891 F.2d 807, 809 n. 2 (11th Cir.1989).

The concurring opinion in *Commonwealth Coatings* restricted the scope of the holding to situations where an arbitrator fails to disclose a substantial relationship with a party and did not adopt an "appearance of bias" standard. Lower courts have rejected the argument that *Commonwealth Coatings* establishes an "appearance of bias" test for evident partiality under 9 U.S.C. § 10. *See Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 681 (7th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983) (stating the language of the *Commonwealth Coatings* opinion suggesting that arbitrators are held to the same ethical standards as judges is dictum); *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2nd Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981) (stating that "the Supreme Court in *Commonwealth Coatings* did not expand the § 10 standard of 'evident partiality' to include 'appearance of bias' "); *Peabody v. Rotan Mosle, Inc.*, 677 F.Supp. 1135, 1138 (M.D.Fla.1987) (noting that the plurality opinion of Justice Black did not command a majority of the Court, and Justice White had required that there be a substantial relationship between an arbitrator and a party before "evident partiality" is established under Section 10).

Additionally, the Eleventh Circuit has noted that the *Commonwealth Coatings* holding is more analogous to a *per se* rule, or an "irrebuttable presumption requiring that the award be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts which could impair his judgment." *Middlesex Mutual Insurance Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir.1982) (arbitration award was properly vacated where the arbitrator failed to disclose that his family-owned insurance company was involved in a dispute with the insurers who were parties to the arbitration proceeding).

In this case, Mr. Farrell disclosed his past brief relationship with Barton–Malow's former CEO in a timely manner, prior to the arbitration hearing.

A trivial relationship does not create the appearance of impropriety necessary to violate 9 U.S.C. § 10(b); there must be a substantial relationship between the arbitrator and a party in order to establish "evident partiality" under the statute. *Peabody*, 677 F.Supp. at 1138 (where the brother of the arbitrator's law partner was once the personal attorney of a witness to the arbitration proceeding, the relationship was too remote and trivial to require that the arbitration award be vacated).

"Evident partiality" exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration"; a mere "appearance of bias" is insufficient to vacate an arbitration award. *Morelite Construction Corp. (Division of Morelite Electric Service, Inc.) v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2nd Cir.1984) (arbitration award vacated where the arbitrator's father was the Vice–President of the international union whose local union was a party to the arbitration proceeding).

The burden of demonstrating facts which would establish a reasonable impression of partiality is on the party challenging the award. *Middlesex Mutual Ins. Co.*, 675 F.2d at 1201. The possibility of bias must be "direct, definite, and capable of demonstration rather than remote, uncertain and speculative." (citation omitted) *Id.* at 1202. (award vacated where the arbitrator's family-owned company was involved in adversarial litigation with parties to the arbitration proceeding, the arbitrator had personally lost $85,000 in the litigation, and the arbitrator was under investigation by the Florida Bar for alleged unethical conduct involving those parties).

The burden of proof for vacating an arbitration award based upon alleged bias is a heavy one. The party must demonstrate that the arbitrator had a personal interest in the proceedings, whether pecuniary or otherwise, which would have biased his or her judgment in the proceedings. *Drexel Burnham Lambert, Inc. v. Pyles*, 701 F.Supp. 217, 220 (N.D.Ga.1988) (claim that the arbitrators had carried on a conversation with a party during a break was insufficient to establish "evident partiality" under the statute).

Austin has not met its burden of demonstrating facts which would establish a reasonable impression of partiality in this case. Mr. Farrell was involved in a single attempted business venture with a former officer of Barton–Malow five years prior to the arbitration proceedings. Mr. Farrell did not realize any pecuniary gain from this brief contact, and the matter was unrelated to the business transactions at issue in the arbitration proceeding.

The relationship ended immediately after the unsuccessful presentation, and Mr. Farrell had no further contact with Barton–Malow. Moreover, the officer who was involved in the business dealing with Mr. Farrell was a former employee of Barton–Malow at the time of the attempted joint venture. All these facts were disclosed by Mr. Farrell in a timely manner.

Mr. Farrell had no financial stake in the outcome of the arbitration proceeding, nor has Austin set forth any other facts which would suggest that Mr. Farrell had any possible interest in the outcome of the arbitration.

These facts do not establish the "appearance of bias" necessary to vacate the arbitration award. *See Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673 (7th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983) (arbitration award confirmed where the president of one of the parties had been the arbitrator's supervisor for two years, but the relationship was distant and impersonal while it existed, the relationship ended fourteen years ago, and the arbitrator had no financial stake in the outcome of the proceeding).

Austin also contends that Mr. Farrell exhibited bias against Austin both during and after the arbitration proceedings. In

support of this claim, Austin submits the affidavits of defendant Alfred S. Austin and Charles W. Pittman, Austin's counsel during the arbitration proceedings.

The affidavit of Mr. Austin states that during the arbitration proceeding, Mr. Farrell "appeared to take detailed notes during Barton–Malow's presentation, but appeared disinterested and took very few notes during our presentation. I observed this personally during my attendance at the hearing." (Dkt.58, Case No. 89–497–CIV–T–23C)

However, this allegation is conclusory and is not supported by any specific facts. Moreover, William M. Camden, Barton's representative at the arbitration hearings who was present at nearly every session over the ninety-six day session, states in his affidavit that Mr. Austin was only physically present for several days of the arbitration proceedings. (Case No. 89–497–CIV–T–22C, Dkt.39)

The fact that Mr. Austin's conclusions were apparently based upon personal observation of only a small portion of the proceedings renders the affidavit even more speculative, especially since there are no specific supporting facts. Thus, his conclusion that Mr. Farrell "appeared disinterested" is insufficient to support Austin's claim of bias.

The affidavit of Mr. Pittman is also insufficient to establish that Mr. Farrell was biased. Mr. Pittman merely states that "(i)n the course of proceedings, I gained the impression that Mr. Farrell was not impartial, and David Hulse, Austin's representative, and I discussed this on a number of occasions." (Dkt.57, Case No. 89–497–CIV–T–22C)

The only reference made to Mr. Farrell's alleged bias in Mr. Pittman's affidavit is a paragraph which states: "(d)uring an on-site inspection of the building, Mr. Farrell had a one-on-one conversation with Mr. Thatcher. When I discovered what was occurring, I objected and insisted that such conversation cease." (Dkt.57, Case No. 89–497–CIV–T–22C)

 The mere fact that an arbitrator may have conversed with a party at some point during the proceedings is insufficient to establish "evident partiality". *See generally Drexel Burnham Lambert, Inc.,* 701 F.Supp. at 220 (claim that the arbitrators had carried on a conversation with a party during a break was insufficient to establish "evident partiality" under the statute).

Mr. Austin also states in his affidavit that at the conclusion of the arbitration proceedings, Austin obtained a copy of a letter dated December 22, 1990, which was sent by Mr. Farrell to Ms. Marita Faiola of the AAA, and which stated, in relevant part:

"The case, to say the least, was most interesting and I am sure one of the longest on record. *I hope that the problems that it caused you and the Miami office are solved in your favor.*" (emphasis added)

(Dkt.58, Case No. 89–497–CIV–T–23C)

Austin states this letter demonstrates that the AAA discussed with Mr. Farrell the lawsuit which was filed against the AAA by Austin in order to remove Mr. Farrell from the arbitration panel. Austin also states this letter demonstrates Mr. Farrell's bias against Austin.

 However, this letter does not materially add to Austin's claim of bias. The first part of the letter merely thanked the AAA and stated that he enjoyed the arbitration experience. That Mr. Farrell also wished the AAA success in resolving its problems, even if a reference to Austin's challenge to his partiality, does not show evident partiality.[5]

Austin claims that this letter demonstrates that AAA discussed this lawsuit with Mr. Farrell. However, the fact that Mr. Farrell was aware of a lawsuit which raised claims regarding his lack of impar-

---

5. Mr. Farrell's letter states the panel met on December 17, 18, 19, 20 and 21, 1990 to resolve the case. The letter, dated December 22, 1990, was apparently written after the panel concluded their discussions regarding this case. (Dkt.17, Ex.N, Case No. 89–497–CIV–T–22C). The arbitration award was entered on January 11, 1991.

tiality is not surprising. It is unlikely that a lawsuit based solely upon allegations regarding Mr. Farrell's past business associations would be litigated without his knowledge, and the mere fact that he was aware of the litigation does not support Austin's claim of bias.

Additionally, the letter does not even mention Barton. Therefore, it lends no support to Austin's allegations of evident partiality due to Mr. Farrell's past association with a former CEO of Barton.

Austin has not met its burden of setting forth specific facts which establish "evident partiality" within the meaning of 9 U.S.C. § 10(b). The relationship between Mr. Farrell and the former CEO of Barton was remote and trivial, as discussed above, and the other grounds cited do not demonstrate evident partiality. Therefore, the arbitration award should not be vacated on this ground.

## II. *Austin's Request For An Evidentiary Hearing*

■ Austin also states it is entitled to an evidentiary hearing on the issue of Mr. Farrell's bias, citing *Sanko S.S. Co. v. Cook Industries, Inc.*, 495 F.2d 1260 (2nd Cir.1973) and *Legion Insurance Co. v. Insurance General Agency, Inc.*, 822 F.2d 541 (5th Cir.1987).

In *Sanko*, the court remanded for an evidentiary hearing because of discrepancies in the record: the arbitrator had disclosed only sporadic dealings with one party, and the other party seeking to vacate the award presented specific facts to the court, discovered through subsequent inquiry, which indicated that the relationship was "a far more substantial and continuing relationship". *Sanko*, 495 F.2d at 1262–1263.

Unlike in *Sanko*, Austin has presented no facts which suggest that there was any relationship between Barton and Mr. Farrell other than the one-time attempted joint venture five years ago. Thus, there are no discrepancies in the record which would warrant an evidentiary hearing.

In *Legion Insurance Co., supra,* the party seeking to vacate the arbitration

award did not even raise evident partiality of an arbitrator as an issue. The court stated that a hearing was not required on the grounds which were raised, although it cited the *Sanko* opinion and opined that "matters such as misconduct or bias of the arbitrators cannot be gauged on the face of the arbitral record alone." *Id.* at 542–543. This statement, which Austin cites in support of its claim that an evidentiary hearing is required, is dictum.

Moreover, Austin has failed to allege sufficient grounds to warrant an evidentiary hearing. *See generally O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 746 and n. 3 (11th Cir. 1988) (stating that the district court did not err in refusing to grant an evidentiary hearing on a motion to vacate an arbitration award where the movant failed to allege sufficient bases to support its claim for relief.)

The record demonstrates only a one-time attempted joint venture involving Mr. Farrell and a former CEO of Barton. This venture was brief in duration, unsuccessful, and resulted in no pecuniary gain to Mr. Farrell.

Mr. Farrell states he has had no further contact with any individual at Barton, and Austin has presented no facts which would suggest otherwise. Additionally, the record indicates that the business transactions at issue in the arbitration proceedings were unrelated to the past joint venture involving Mr. Farrell.

Absent some showing by Austin that Mr. Farrell's relationship was other than what he stated it was, an evidentiary hearing is not warranted. *See Sanko*, 495 F.2d at 1262–1263.

The affidavits of Alfred Austin and Charles Pittman also do not allege facts sufficient to warrant an evidentiary hearing regarding Austin's claim of evident partiality during the arbitration. Austin's request for an evidentiary hearing should, therefore, be denied.

## III. *Allegations Regarding Improper Selection of Arbitrators*

■ At the hearing held on April 30, 1992, Austin stated the only issue remain-

ing for the court to determine was the alleged bias of Mr. Farrell. Therefore, this claim of alleged bias on the part of the AAA appears to have been withdrawn. However, even if this claim was considered, it does not support vacating the arbitration award.

Austin's claims that arbitrators from Tampa were systematically excluded from some of the lists of arbitrators based upon ex parte communications between Barton and the AAA. Austin alleges that during a conversation between Mr. Pedro Roman–Correa of AAA and John Sours, counsel for Barton, Mr. Sears requested that a supplemental list of arbitrators be submitted to the parties which excluded arbitrators from the Tampa Bay area.

The Magistrate Judge notes initially that irregularities in the selection process for the arbitration panel is not grounds for vacating an arbitration award under 9 U.S.C. § 10. However, even if these allegations are considered, they are not supported by the record.

Mr. Roman–Correa testified in a deposition taken on October 26, 1989 that he does not recall the receipt of such a request from Barton, and that the decision to issue a supplemental list of arbitrators was prompted by the complex issues in the case and not by any of the parties. (Dkt.42, p. 15, 35–36, Case No. 89–479–CIV–T–22C) Therefore, this contention is without merit.

The allegation that Tampa area arbitrators were excluded from the arbitration selection process is also without merit. One of the three arbitrators who was appointed to the panel, Mr. Donald Manguson, was from the Tampa area. (Dkt.40, Sours affidavit, Case No. 89–497–CIV–T–22C)

### III

### MOTION TO STRIKE

■ Barton has filed a motion to strike the affidavits of Mr. Austin and Mr. Pittman, which were filed in support of Austin's memorandum in opposition to the motion for summary judgment. (Dkt.37, Case No. 89–497–CIV–T–22C) Barton contends that the affidavits are conclusory and fail to set forth specific supporting facts.

Motions to strike are generally disfavored and infrequently granted. *Cronovich v. Dunn,* 573 F.Supp. 1330, 1338 (E.D.Mich.1983). However, it is appropriate to consider a party's objections to affidavits which are filed in support of a motion for summary judgment when ruling on the merits of the motion for summary judgment. *See Morgan v. Sears, Roebuck & Co.,* 700 F.Supp. 1574, 1576 (N.D.Ga.1988)

The motion to strike should be denied. However, the court should consider Barton's objections to the conclusory nature of the affidavits in determining whether summary judgment should be granted.

### MOTION FOR SUMMARY JUDGMENT

To the extent that the motion for summary judgment requests that judgment be entered for Barton pursuant to the arbitration award, the motion should be granted. There are no genuine issues of material fact remaining with respect to matters which were submitted to arbitration, and the award should be confirmed, as discussed above.

At the April 30, 1992 hearing, the parties agreed that even if the arbitration award is confirmed, an issue remains in Case No. 89–980–CIV–T–22B regarding whether Barton has established a mechanic's lien pursuant to Chapter 713 of the Florida Statutes which can be foreclosed.

■ Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the initial burden of coming forward with proof of the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden may be satisfied by showing an absence of evidence to support the non-moving party's case, where the nonmoving

party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–2554, 91 L.Ed.2d 265 (1986).

If the moving party comes forward with this proof, then the burden shifts to the party opposing the motion for summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "(t)he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Florida Statute Section 713.06(3)(d) provides that when final payment becomes due under a contract:

> The contractor shall give to the owner an affidavit stating, if that be the fact, that all lienors under his direct contract have been paid in full, or if the fact be otherwise, showing the name of each lienor who has not been paid in full and the amount due or to become due each for labor, services, or materials furnished. The contractor shall have no lien or right of action against the owner for labor, services, or materials furnished under the direct contract while in default for not giving the owner the affidavit. The contractor shall execute and deliver it to the owner at least 5 days before instituting an action as a prerequisite to the institution of any action to enforce his lien under this chapter, even if the final payment has not become due because the contract is terminated for a reason other than completion and regardless of wheth-

er the contractor has any lienors working under him or not.

Fla.Stat. § 713.06(3)(d).

Austin contends that Barton is not entitled to a lien because it failed to perfect its lien pursuant to this statute. Austin has submitted the affidavit of Alfred S. Austin, which states that Barton never provided the contractor's affidavit, as required by the statute. (Dkt.58, Case No. 89–497–CIV–T–22C)

This affidavit creates a genuine issue of material fact regarding whether Barton is entitled to a lien under Chapter 713 of the Florida Statutes and precludes entry of summary judgment.[6] Therefore, Barton's motion for summary judgment should be denied as to this request.

Barton also requests that the judgment of $311,035.00 pursuant to the arbitration award be entered against Austin South I, Ltd. and Alfred S. Austin, individually, as general partner of Austin South I, Ltd.

The arbitration award requires Austin South I, Ltd. to pay Barton the amount of $311,035.00, and Barton has moved to confirm this award. However, there is no question that Alfred S. Austin, as general partner of the limited partnership, Austin South I, Ltd., is liable for the debts of the limited partnership.

Florida Statute Section 620.125 provides that a general partner of a limited partnership has the same liabilities to a third party as a partner in a partnership without limited partners. *See* Fla.Stat. § 620.615(2). Section 620.63 of the Uniform Partnership Act provides that all partners are jointly liable for the debts and obligations of the partnership. *See* Fla.Stat. § 620.63(2).

Therefore, absent any objection from Austin in the time provided for filing objections pursuant to 28 U.S.C. § 636(b), judgment should be entered against Austin South I, Ltd. and Alfred S. Austin, as general partner of Austin South I, Ltd.

---

**6.** Since Barton's motion should be denied on the merits as to this issue, it is unnecessary to address Austin's argument that the motion was premature because it was filed before Austin even answered the complaint.

## IV

### MISCELLANEOUS MOTIONS

Austin's Motion To Consolidate (Dkt.24, Case No. 89–980–CIV–T–22B) and Austin's Motion To Lift Stay And Reopen Case (Dkt.26, Case No. 89–980–CIV–T–22B) should be denied as moot. In an order dated June 20, 1991, the District Judge consolidated these actions and lifted the stay. (Dkt. 30, Case No. 89–497–CIV–T–22C).

Barton's Motion For Leave To File Reply To Plaintiff's Memorandum Of Law In Opposition To Barton–Malow's Motion For Summary Judgment And Dismissal With Prejudice And Motion To Confirm Arbitration Award (Dkt.63, Case No. 89–497–T–22C) and Austin's Motion For Leave To File Response (Dkt.66, Case No. 89–497–CIV–T–22C) should be denied. No additional memoranda are necessary for just resolution of these motions.

### CONCLUSION

It is, therefore, RECOMMENDED:

(1) that Austin's Motion To Vacate Arbitration Award (Dkt.17, Case No. 89–497–CIV–T–22C), Austin's Motion For Evidentiary Hearing (Dkt.19, Case No. 89–497–CIV–T–22C), Austin's Motion To Vacate Arbitration Award (Dkt.22, Case No. 89–980–CIV–T–22B), Austin's Motion For Evidentiary Hearing (Dkt.28, Case No. 89–980–CIV–T–22B) and Austin's Motion To Vacate Arbitration Award (Dkt.18, Case No. 91–169–CIV–T–22B) be DENIED;

(2) that Barton and BMT's Motion To Confirm Arbitration Award (Dkt.35, Case No. 89–497–CIV–T–22C) be GRANTED;

(3) that Barton, BMT and Aetna's Motion For Summary Judgment And Dismissal With Prejudice (Dkt.37, Case No. 89–497–CIV–T–22C) be GRANTED to the extent that the arbitration award be confirmed and that judgment be entered against Austin South I, Ltd. and Alfred S. Austin, as general partner of Austin South I, Ltd. in the amount of $311,035.00. All claims by Austin against Barton–Malow Thatcher, Inc., Barton–Malow Company and Aetna Casualty & Surety Company should be dismissed. The motion should otherwise be DENIED;

(4) that the Request Of Barton–Malow Company and Barton–Malow Thatcher, Inc. To Permit Filing Of Brief In Opposition To Motion To Vacate Arbitration Award In This And Related Cases (Dkt.25, Case No. 89–497–CIV–T–22C), the Request Of Barton–Malow and Barton–Malow Thatcher, Inc. To Permit Filing Of Brief In Opposition To Motion To Vacate Arbitration Award In This And Related Case (Dkt.32, Case No. 89–980–CIV–T–22B) and Barton and BMT's Motion For Enlargement Of Time To Permit Filing Of Brief In Opposition (Dkt.36, Case No. 89–980–CIV–T–22B) be GRANTED;

(5) that Barton, BMT and Aetna's Motion To Strike Portions Of (1) Affidavit Of Alfred S. Austin In Opposition To Motion For Summary Judgment and (2) Affidavit of Charles W. Pittman In Support Of Motion To Vacate Arbitration Award (Dkt.61, Case No. 89–497–CIV–T–22C) be DENIED;

(6) that the Motion For Leave To File Reply To Plaintiff's Memorandum Of Law In Opposition To Barton–Malow's Motion For Summary Judgment And Dismissal With Prejudice And Motion To Confirm Arbitration Award (Dkt.63, Case No. 89–497–CIV–T–22C) and Austin's Motion For Leave To File Response (Dkt.66, Case No. 89–497–CIV–T–22C) be DENIED;

(7) that Austin's Motion To Consolidate (Dkt.24, Case No. 89–980–CIV–T–22B) and Austin's Motion To Lift Stay And Reopen Case (Dkt.26, Case No. 89–980–CIV–T–22B) be DENIED AS MOOT.