**MIDDLESEX MUTUAL INSURANCE COMPANY, et al.,**
**Plaintiffs-Appellees,**

v.

**Stuart LEVINE, et al.,**
**Defendants-Appellants.**

**No. 80–5630.**

United States Court of Appeals,
Eleventh Circuit.

May 10, 1982.

Horton, Perse & Ginsberg, Edward A. Perse, Edward A. Moss, Miami, Fla., for defendants-appellants.

Daniels & Hicks, Mark Hicks, Spencer & Taylor, Arthur H. Taylor, Miami, Fla., for plaintiffs-appellees.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal requires the review of a trial court's application of federal and Florida law governing the nature of the requirement of arbitrator impartiality with respect to arbitration hearings and the applicable principles of estoppel. Because we find that the district court properly vacated the arbitration award on the ground of evident partiality of the neutral third arbitrator, we affirm.

## FACTS

After suffering serious personal injuries in a 1974 automobile accident, appellant Stuart Levine filed uninsured/underinsured motorist claims with Middlesex Mutual In-

surance Company (Middlesex), Patriot General Insurance Company (Patriot) and Allstate Insurance Company (Allstate) demanding arbitration. Middlesex and Patriot refused to arbitrate and filed a declaratory action pursuant to 28 U.S.C. § 2201 against Levine, his company—Gold Coast Leasing Corp., and Allstate regarding the nature and extent of available insurance coverage. The trial court entered an "Agreed Declaratory Judgment" submitting the resolution of Levine's claims to the jurisdiction of the American Arbitration Association (AAA).

In August, 1977, the parties selected a panel of three arbitrators with John L. Hartnett acting as the neutral third arbitrator. At the commencement of the arbitration hearing, Hartnett, having been informed that the dispute concerned Middlesex and Patriot, signed the oath of arbitrator impartiality which required him to divulge any prior experiences with any of the parties or their counsel that would reflect on his ability to serve as neutral arbitrator. At the time he took this oath, Hartnett was aware that Hartnett, Inc., a family-owned insurance company, had been entangled in a dispute with Middlesex and Patriot, and that he was under investigation by the Florida Bar concerning a trust account violation involving these insurers. Nevertheless, he failed to disclose his adversary relationship with Middlesex and Patriot. Hartnett and another arbitrator rendered a $1,200,000 award in favor of the claimant.

Middlesex and Patriot filed a petition to vacate the arbitration award in the United States District Court for the Southern District of Florida pursuant to diversity of citizenship jurisdiction, 28 U.S.C. § 1332, and 28 U.S.C. § 2201, the federal declaratory judgment action statute. Finding that Hartnett had violated his duty to reveal potential bias, the district court vacated the arbitration award without reaching the question of actual corruption, fraud, or partiality.

## ISSUES

We must determine whether the trial court erred in holding: (1) that the neutral arbitrator demonstrated evident partiality in failing to disclose his involvement in a dispute between his family-owned insurance company and the insurers who were parties to the arbitration proceeding, and (2) that the insurers had insufficient knowledge of the neutral third arbitrator's background to be estopped from claiming evident partiality after rendition of the award.

## I. ARBITRATOR EVIDENT PARTIALITY

■ In vacating the award for "evident partiality," the district court found that for five years prior to 1975, Hartnett, Inc., had an agency agreement with Middlesex, and that since 1975 Hartnett, Inc., was an agent for Patriot. During this period, Hartnett, a practicing attorney, was a licensed insurance agent with and general counsel to Hartnett, Inc. He also served as Hartnett, Inc.'s, resident agent and one of its directors. Following cancellation of the agency relationship, Middlesex filed suit in May, 1977, against Hartnett, Inc., and William Hartnett (the brother of John L. Hartnett) claiming nonpayment of approximately $22,300 in premiums collected by the agency and owed to Middlesex, and $6,240 in collected premiums owed to Patriot. Although Hartnett did not represent Hartnett, Inc., in the action, as attorney for the firm, he previously had written two letters to Middlesex disputing the amount of unpaid premiums.

In January, 1977, the Florida Bar filed a complaint against Hartnett based upon findings reflecting that he misappropriated trust account funds to make payments to Middlesex and Patriot. In July, 1977, only one month prior to the institution of the subject arbitration hearing, Hartnett responded to interrogatories propounded by the Florida Bar requesting an explanation of the circumstances surrounding the utilization of his trust account checks for these payments. Based upon its findings of fact, which are not disputed, the district court concluded that:

23. At the time John Hartnett took the arbitrator's oath he was aware that he had been seriously entangled in a dispute with Middlesex/Patriot General and had been investigated by The Florida Bar about a trust account violation involving these insurers. Moreover, these were not the kind of dealings which could be considered part of the ordinary course of an arbitrator's private business. *Garfield & Co. v. Wiest,* 432 Fed.[2d] 849 (2d Cir. 1970).

24. The cumulative effect of the evidence leads to the conclusion that John Hartnett had a duty to reveal his close relation to the family insurance business, the Bar investigation, and the lawsuit against Hartnett, Inc. pursuant to Accident Claims Arbitration Rules, Section 9 effective March 1, 1976. A conclusion that Mr. Hartnett was not actively involved with the business of Hartnett, Inc. from August 1975 to August 1977 is not possible. The opposite conclusion is dictated by the evidence of this case.

25. The similarity between Fla.Stat. 682.13(1) and 9 U.S.C. 10(b) of the United States Arbitration Act suggest similar legislative intent. Thus it is appropriate to vacate an arbitration award where the neutral arbitrator has the appearance of bias although there is no evidence of corruption, fraud, or partiality. *Commonwealth Coatings v. Continental Casualty,* 393 U.S. 145 [89 S.Ct. 337, 21 L.Ed.2d 301] (1968); *Carol City Utilities v. Gaines Construction,* [*Gaines Construction Co. v. Carol City Utilities, Inc.*] 164 So.2d 270 (Fla. 3d Dist.Ct.App.1964).

Both the United States Arbitration Act, 9 U.S.C. § 10(b) (1970), and the Florida Arbitration Code, Fla.Stat. § 682.13(1)(b) (1981), authorize a trial court to vacate an arbitra-

tion award in cases of "evident partiality" of an arbitrator.[1]

The Supreme Court in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), delineated the requirements of impartiality in arbitration proceedings under 9 U.S.C. § 10. The challenged arbitrator had earned about $12,000 in fees over a period of four or five years for consulting services rendered to the prevailing party which included services involved therein. The arbitrator failed to disclose this relationship which also was unknown to the losing party. In his plurality opinion, Mr. Justice Black found that the arbitrator's failure to disclose warranted setting aside the award for evident partiality. He stated that a panel of arbitrators "not only must be unbiased but also must avoid even the appearance of bias" and thus must "disclose to the parties any dealings that might create an impression of possible bias."[2] 393 U.S. at 149–50, 89 S.Ct. at 339–40.

In writing for himself and Mr. Justice Marshall, however, Mr. Justice White concurred, stating:

> [A]rbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial. . . .
>
> . . . .
>
> . . . [I]t is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed.

393 U.S. at 150, 151–52, 89 S.Ct. at 340–41.

In view of the code of strict morality and fairness which underlies the arbitrator's

---

1. Although federal law authorizes vacation of an arbitration award on the ground of evident partiality of any of the arbitrators on the panel, Florida law refers only to the neutral third arbitrator. 9 U.S.C. § 10(b) (1970); Fla.Stat. § 682.13(1)(b) (1981).

2. *Compare Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968) (reasonable appearance of bias justifies vacating arbi-

tration award) *and Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196, 1200 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980) (reasonable appearance of partiality) *with International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548, 551 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981) (requiring clear, unexplained evidence of evident partiality).

duty of disclosure, the Florida Supreme Court also has recognized that:

> [T]he law is well settled that arbitrators exercise judicial functions, and are in fact, judicial officers.... It therefore becomes of the utmost importance that ... every possible safeguard should be thrown about the proceedings to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties.

*Cassara v. Wofford*, 55 So.2d 102, 105 (Fla. 1951). The *Commonwealth Coatings* Court warned that "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." 393 U.S. at 149, 89 S.Ct. at 339.

The *Commonwealth Coatings* holding has been interpreted as "somewhat analogous to a *per se* rule" or irrebuttable presumption requiring the award to be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts which could impair his judgment. *Overseas Private Investment Corp. v. Anaconda Co.*, 418 F.Supp. 107, 110 (D.D.C.1976); *see Gaines Construction Co. v. Carol City Utilities, Inc.*, 164 So.2d 270, 272 (Fla.Dist.Ct.App.1964) (requiring only a showing of a circumstance tending to bias judgment to disqualify arbitrator).

Prior to the arbitration proceeding in the instant case, Hartnett signed the Arbitrator's Oath of the American Arbitration Association, which provides in pertinent part:

> It is important that the parties have complete confidence in the Arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure. If you are aware of such relationship, please describe it on the back of this form. The AAA will call the facts to the attention of the parties' counsel....

Furthermore, Hartnett testified in his deposition that prior to arbitration he refreshed his familiarity with the Accident Claims Arbitration Rules of the AAA (1976) and specifically recalled reading section 9 which states:

> *Qualification of Arbitrators*: No person shall serve as an Arbitrator in any arbitration in which he has any financial or personal interest. Arbitrators serve without fee in accident claims cases. *An Arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify him as an impartial Arbitrator.* [Emphasis added.]

The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award. *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196 (7th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980); *Reed & Martin, Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268, 1275 (2d Cir. 1971). Appellants thus contend that appellees failed to meet its burden to show arbitrator evident partiality. They rely on Hartnett's deposition testimony that he had forgotten the dispute, was no longer associated with the family firm, and had not litigated against Middlesex/Patriot.

We find Hartnett's assertion of a bad memory to be spurious, especially since he also testified that he personally lost $85,000 in connection with the Middlesex/Patriot controversy. In fact, the record discloses that only four weeks prior to the critical date of the arbitration hearing, Hartnett personally signed interrogatories propounded by the Florida Bar in connection with the related disciplinary proceedings which were still pending at the time of the award. Lawyers are not apt to suffer lapses of memory in regard to pending bar investigations and disciplinary proceedings concerning the misapplication of trust funds. In neglecting to disclose these circumstances, Hartnett violated his affirmative duty under the AAA rules as well as his oath obligation.

Even under the standard of proof urged by appellants, we find that the evidence

amply supports the district court's conclusion of evident partiality. That conclusion is based upon findings that Hartnett was aware of, yet failed to disclose the discord between Hartnett, Inc., and appellees over the firm's failure to remit uncollected premiums, the Middlesex/Patriot trust account dispute, and the concomitant Florida Bar investigation. Here, the possibility of bias was "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d at 1200. Like the third arbitrator in *Commonwealth Coatings*, Hartnett had "repeated" and "significant" business dealings involving thousands of dollars with one of the parties to the arbitration over a period of four or five years. Hartnett did not reveal this direct and substantial financial relationship with the appellees and the facts were not disclosed until after a decision on the merits.

## II. ESTOPPEL

Assuming that appellees sustained their burden of proving arbitrator evident partiality, appellants contend that, as a matter of law, Middlesex and Patriot are estopped or waived their right to assert Hartnett's appearance of bias. In support of this contention, appellants posit that although the insurers knew or should have known of Hartnett's partiality prior to arbitration, they failed to exercise diligence in investigating his identity and background.

Middlesex and Patriot argue that their parent company, Sentry Insurance Company (Sentry), is not chargeable with knowledge of Hartnett's partiality because no single corporate employee knew both that Hartnett was sitting as neutral arbitrator, and that he was embroiled in a dispute with their company. Appellees also argue that a recipient may rely on the truth of a representation even though its falsity could have been ascertained unless he knows the representation is false or the falsity is obvious to him. Allstate contends that appellants cannot assert the waiver or estoppel defense against Allstate because it had no knowledge of Hartnett's involvement with Mid-

dlesex and Patriot or of his role in the Hartnett family insurance company prior to arbitration.

In concluding that the facts did not warrant waiver or estoppel, the district court found that although a few employees at Middlesex/Patriot had some familiarity with the name "Hartnett," the cumulative effect of this knowledge gave insufficient notice to suggest a problem with the arbitrator's neutrality. The district court also found that Hartnett's involvement with Middlesex/Patriot and investigation by the Florida Bar about a trust account violation involving these insurers were not the kind of dealings which could be considered part of the "ordinary course of an arbitrator's private business."

■ Several appellate courts have held that information contained in the records of another branch of the government or a different department in the Veterans' Administration is not chargeable to the insurance service and have also held that information within the knowledge of one division of an insurance company is not chargeable to another department. *E.g., Schrader v. Prudential Insurance Co.*, 280 F.2d 355, 361 (5th Cir. 1960); *Halverson v. United States*, 121 F.2d 420, 422 (7th Cir.), *cert. denied*, 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556 (1941); *United States v. Depew*, 100 F.2d 725, 728 (10th Cir. 1938). Although the government is distinct from a private insurance company and the relationship of the government to veterans or of an insurance company to an insured is distinguishable from the relationship between an insurance company and an arbitrator or its agent, the principle in *Halverson, Schrader*, and that line of cases is applicable here. This principle states that in the interest of processing expeditiously a great volume of business, a nationwide insurer is entitled to rely on the representations of a potential arbitrator without investigating all of its files to determine if the candidate is committing a fraud. "[E]ven its own earlier records do not put the insurer upon notice of the falseness of [these] statements ... unless there is some circumstance which

directs attention to them." *Schrader v. Prudential Insurance Co.*, 280 F.2d at 362.

This statement is equally applicable to facts concerning partiality of the neutral third arbitrator which come to the attention of different departments within a large insurance corporation subsequent to the rendition of an arbitration award. Hence, although it was known to the Middlesex Underwriting Division prior to arbitration that John L. Hartnett, Esq., was connected with Hartnett, Inc., regarding litigation brought by Middlesex/Patriot, that fact may not be used to estop the Sentry Claims Division from contesting Hartnett's partiality after the award was made.

The record indicates that the Sentry Groups Claims Office in Orlando processed and channeled claims arising out of policies issued by Middlesex and/or Patriot from their Southern Florida files. Further, the claims division did not learn of Hartnett's connection with the underwriting department until Sentry's Orlando claims manager, after learning of the award, called the zone manager in Atlanta to ascertain whether Hartnett was a licensed agent for Sentry, Middlesex, or Patriot. The only evidence on the issue is that the Sentry claims department had no dealings prior to arbitration with the underwriting departments of the insurers regarding this matter. Appellees' knowledge becomes further attenuated by Sentry's purchase of Middlesex and Patriot prior to the arbitration hearing in this case and its subsequent handling of their claims files.

The law does not require that Sentry check its vast corporate files in each separate division to ascertain whether an arbitrator has violated his duty of disclosure. Such a procedure would be prohibitively time consuming and costly. It would also frustrate the goal of arbitration which is to expedite the resolution of disputes and to decrease the cost of litigation. *See Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir. 1981).

The general proposition that an insurance company's claims division ordinarily is not chargeable as a matter of law with the contents of its underwriting files only incidentally impacts upon our decision. Three salient facts also are present in this case: (1) The arbitrator was selected because he withheld information which he had the affirmative duty to disclose; (2) the information creating the appearance of partiality arose from dealings between the arbitrator and appellants outside the ordinary course of business; and (3) Congress placed arbitrators under the heavy obligation to act out of strict morality and fairness.

Appellants contend, however, that *Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir. 1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971), supports their view that the arbitrator's breach of his duty to disclose any dealings that might create a reasonable impression of bias does not warrant setting aside an arbitration award where, as here, the appellees waived or are estopped to assert this objection. Appellants rely on section 24 of the Accident Claims Rules of the AAA which states:

*Waiver of rules.* Any party who responds with the arbitration after knowledge that any provisional requirement of these rules has not been complied with or fails to state his objection thereto in writing shall be deemed to have waived his right to object.

*Garfield & Co. v. Wiest* held that, when parties have agreed to arbitration *with full awareness* of prior certain, almost necessary, dealing in the ordinary course of business between a potential arbitrator and one of the opposing parties, disclosure of these dealings is not required by *Commonwealth Coatings*. This is true because the parties are deemed to have waived any objections based thereon. 432 F.2d at 853–54. The Second Circuit emphasized, however, that the arbitrator's duty pertains to the disclosure of dealings which are not in the ordinary course of business, and of which the parties cannot reasonably be expected to be aware. 432 F.2d at 854; *Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 108 (2d Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972).

The present case, like *Commonwealth Coatings,* is readily distinguishable. The adversarial and close financial relations that existed for a period of years between Hartnett and Middlesex/Patriot were unknown to Sentry and were never revealed to it by the arbitrator or any one else until after an award had been rendered. Moreover, we cannot say that the district court erred in concluding that Hartnett's serious legal entanglement with Middlesex/Patriot and concomitant investigation by the Florida Bar about a trust account violation involving these insurers were not the kind of dealings which could be considered part of the ordinary course of an arbitrator's private business.

◼ We also find that waiver or estoppel would be inappropriate in view of the code of strict morality and fairness which shapes the arbitrator's affirmative duty of disclosure. *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. at 148, 89 S.Ct. at 339. By positing that appellants have the duty to inquire into the background of the arbitrator, appellant attempts to shift to the parties to the arbitration the burden of determining and disclosing bias or the reasonable appearance thereof. Neither federal nor Florida law supports such a result. As the district court aptly stated, "for the arbitration process to work successfully, the onus must be placed on the arbitrator to reveal potential bias." Moreover, the neutral arbitrator signed an oath denying any relations with any of the parties.

◼ To hold, in the circumstances of this case, that the insurers waived their right to contest the alleged impartiality of the neutral arbitrator because the insurers did not discover evidence of partiality prior to arbitration would put a premium on concealment. Waiver applies only where a party has acted with full knowledge of the facts. *Mutual of Omaha Insurance Co. v. Eakins,* 337 So.2d 418, 419 (Fla.Dist.Ct.App.1976). Further, estoppel can be invoked against an insurer only when *its* conduct has been such as to induce reliance upon it. 337 So.2d at 419. As Judge Tuttle stated, in another

context: "The law is not tender toward those who fail in their responsibility to exercise the necessary good faith in their dealings with others." *New York Life Insurance Co. v. Strudel,* 243 F.2d 90, 94 (5th Cir. 1957).

Because we find that the district court properly vacated the arbitration award, we need not consider the merits of appellants' final claim regarding the validity of the award as it relates to the Agreed Declaratory Judgment.

### CONCLUSION

Because the neutral arbitrator failed to disclose his significant connection to some of the parties, thus creating a reasonable appearance of bias, we hold that the district court properly vacated the arbitration award on the ground of evident arbitrator partiality. The court also correctly found that appellees did not waive their objection because: (1) they possessed insufficient knowledge of facts possibly indicating bias prior to arbitration; (2) the dealings between the arbitrator and the insurers which gave the appearance of partiality were outside the ordinary course of the arbitrator's business; and (3) the affirmative duty of disclosure lies with the arbitrator.

AFFIRMED.