REAVLEY, Circuit Judge,
dissenting,
joined by WIENER, EMILIO M. GARZA, BENAVIDES and CARL E. STEWART, Circuit Judges:
In 1968 the Supreme Court held that an arbitral award could not stand where the arbitrator had failed to disclose a past relationship that might give the impression of possible partiality.[1] The Court has never changed that holding; it is the law that rules us today. But the majority of this court disapprove of that law because they prefer to protect arbitrators and their awards when they fail to disclose prior relationships with parties or counsel. They therefore change the law for this case and, to make it appear as if their transgression does not matter, trivialize their report of the past relationship. I dissent because this court may not overrule a decision of the Supreme Court.

Commonwealth Coatings

A.C. Samford Overseas, Inc. was the general contractor on six large construction projects in Puerto Rico. Commonwealth Coatings Corporation had the painting subcontract for the projects. A dispute arose about Commonwealth’s performance and then its abandonment of the work. The dispute went to three arbitrators, and the unanimous award of all three awarded Samford $15,872.35. Commonwealth appealed to the First Circuit on the sole ground of the failure of Capacete, the impartial arbitrator selected by the other two arbitrators, and of appellee Samford, the successful party, to disclose their past relationship. Capacete was a majority owner of an engineering company that had done work for Samford, including work with the architects planning the projects at issue. He had done no work on the construction or any matter related to questions in the arbitration. When Capacete was being selected to be the third arbitrator, he was not asked about a prior relationship with Samford. The circuit court affirmed the denial of the attack on the award in the absence of bias or prejudice.[2]
The Supreme Court granted certiorari and vacated the arbitral award, saying that while the arbitrator had shown no improper motives, he was required to “disclose to the parties any dealings that might create an impression of possible bias.” Id. at 147-49, 89 S.Ct. 337. The majority opinion was written by Justice Black. Justice White also wrote and began by saying: “While I am glad to join my Brother Black’s opinion in this case, I desire to *287 make these additional remarks.” Six justices vacated the award even though the arbitrator had been fair and impartial.
The Commonwealth Coatings opinions of Justice Black (with Warren, Douglas, and Brennan joining) and Justice White (with Marshall joining) are not lengthy. They are easily compared and easily reconciled. Both opinions emphasize the importance of impartiality for those who decide controversy. Justice White distinguishes the role of judges from that of arbitrators in that the arbitrator’s relation with a party is immaterial — so long as the other party is informed in advance and makes no objection. And he points out that a trivial relation would not create an impression of possible bias so as to meet the rule stated by Justice Black. Justice White’s contribution emphasizes the importance of establishing an atmosphere of frankness at the outset of an arbitration by disclosure when the parties are free to reject the arbitrator or accept him with knowledge of the relationship. I am confident that Justices White and Marshall knew what they were saying when they said they joined Justice Black’s opinion, and were not describing it as the majority opinion only to be “magnanimous” as our court now says. Furthermore, it is quite pellucid that six Justices of the Court agreed that, despite the fairness and impartiality of the arbitrator, failure to disclose “any dealings that might create an impression of possible bias” justifies vacatur of the award. The Court did vacate that award only for that reason.

Commonwealth Coatings and the Circuit Courts

The majority opinion manages to substitute actual bias, or the reasonable impression of bias, or concrete impression of bias for the Supreme Court’s ruling that dealings that might create only an impression of possible bias must be disclosed. And it purports to join other circuits to hold that non-disclosure alone does not require vaca-tur of an arbitral award. If the circuit courts could overrule the Supreme Court, the majority might be on a bit firmer ground, because the Commonwealth Coatings ruling has not been well received by some of the circuit courts.
For example, Judge Posner declared in 1983 in Merit Insurance Co. v. Leatherby Insurance Co., 714 F.2d 673, 680 (7th Cir.), that the test of the undisclosed relationship must be so intimate as to cast serious doubt on the arbitrator’s impartiality. Even though the attack on the arbitral award there was under Rule 60(b) and was rejected because the award did not create a substantial danger of an unjust result, Judge Posner took the occasion to say that Commonwealth Coatings “provides little guidance because of the inability of a majority of Justices to agree on anything but the result.” Id. at 681. The following year the Second Circuit had a case where ¿he relationship was of father to son, known from the outset, but Judge Kaufman addressed Commonwealth Coatings as though the opinions of Justice Black and Justice White could not be reconciled and as though they had addressed disqualification of arbitrators rather than failure to disclose. Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 82-83 & n. 3 (1984). Judge Kaufman saw a problem with Justice Black’s statement that arbitrators must avoid the appearance of bias. Id. at 82-83. All will agree with Justice Black’s statement that any tribunal trying controversies must avoid bias and the appearance of bias, 393 U.S. at 150, 89 S.Ct. at 340, but this was not a statement of the disclosure requirement of the Court. Other courts have transposed the Supreme Court’s disclosure requirement to avoid *288 the “appearance of bias.” See, e.g., Sunkist Soft Drinks v. Sunkist Growers, 10 F.3d 753, 758 (11th Cir.1993); Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 n. 19 (6th Cir.1989); Middlesex Mutual Ins. Co. v. Levine, 675 F.2d 1197, 1200 (11th Cir.1982).
We should distinguish the Commonwealth Coatings requirement for disclosure of prior relationships when arbitrators are being selected from what will disqualify an arbitrator after selection. The majority misses that distinction in its discussion of Bernstein Seawell & Kove v. Bosarge, 813 F.2d 726 (5th Cir.1987).
The majority departs from the Supreme Court’s ruling by following those courts that have decided that Commonwealth Coatings is a plurality or a “plurality-plus” opinion.[3] But the majority opinion, like the opinions on which it relies, do not explain how Justice Black’s majority opinion is irreconcilable with Justice White’s concurrence. Aside from Justice White’s statement that he was glad to join the majority opinion and the substance of his remarks, Justice White did not articulate an alternative rationale. Justice White merely stated what the Court did not hold, which is not inconsistent with the majority opinion.
The Ninth Circuit followed Commonwealth Coatings in Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir.1994). In that case the district court had denied vacatur because the arbitrator was unaware of his firm’s representation, of the parent company of a party because he had run a conflict check on the party but not the parent company, and therefore no evident partiality existed. The Ninth Circuit correctly distinguished cases of bias or appearance of bias and failure to disclose, rejected the view that Commonwealth Coatings was only a plurality decision, and applied the non-disclosure rule of the Supreme Court.
The judicial disfavor of Commonwealth Coatings, while receiving surprisingly little treatment, has not gone unnoticed by commentators. One observed that “[fjederal courts have floundered in the wake of Commonwealth Coatings” treating Justice White’s .concurrence as authoritative and standing for a different holding even though Justice White “does not expressly define the standard that should govern arbitrator conduct. His opinion only makes it clear that ... arbitrators will be governed by a, standard less than the standard governing judges.” Elizabeth A. Murphy, Note, Standards of Arbitrator Impartiality: How Impartial Must They Bet, 1996 J. Disp. Resol. 463, 470.
While I can understand the desire to protect the finality of arbitration awards and avoid a return to extended court expense and delay, this does not justify evading the law of the Supreme Court by misstating it or by avoiding it by bleaching the evidence of possible partiality. Nor should we miss the need to promote the impartiality of arbitrators in this time when that is the favored method of dispute resolution. Influence can so easily corrupt the decision-making process even when it is not recognized by the magistrate or arbitrator himself. And to prove bias or improper influence is rarely possible. It is imperative that we not allow even the good faith or memory of the potential arbitrator to control the disclosure decision for, as the Justices made clear in Commonwealth Coatings, it is the protection and reassurance of the party that matters most.[4]

*289
Positive Software v. New Century Mortgage

Coming to the case on appeal, New Century seeks borrowers by telemarketing and employs computer devices to call prospects. In January of 2001, New Century obtained a license from Positive Software to use the software product Loan Force developed by Positive Software. Positive Software was then told by former employees of New Century that it was reverse-engineering or copying Loan Force in the effort to develop its own software and dispense with Loan Force. The Software Subscription Agreement, ¶ 7A, prohibited that conduct. Positive Software terminated the license, called for an audit and return of its software, and filed this lawsuit in February of 2003.
Despite assurances by counsel of New Century, efforts by Positive Software and the court for the return of the software and disclosure of its use failed. Positive Software enlisted the aid of the district court in a series of hearings in March and April that culminated on April 28, 2003 in an injunction and protective order by the court, based on a finding that New Century had copied Positive Software’s material and enjoining New Century from use of Loan Force software, its database, or the software New Century was claiming to be its own products. Positive Software then moved for a default judgment on the ground that New Century had destroyed evidence. The district court sent the parties to mediation and hearings before a magistrate judge. Finally, on September 26, 2004, the district judge found that its orders had been violated in an order telling the disturbing story. Positive Software Solutions, Inc. v. New Century Mortgage Corp., 337 F.Supp.2d 862 (N.D.Tex.2004).
Meanwhile the dispute had gone to arbitration where the award favored New Century completely. The award found that there had been no infringement or breach of the licensing contract and charged Positive Software with several million dollars of damages, fees, and costs.
At the outset of his ruling the arbitrator ridiculed Positive Software’s claim and wrote: “It involves a saga of how failure to renew an $86,100 software license has led to a claim for $500,000,000 in damages in this arbitration, and for $38,000,000,000 in Federal Court.” The district court expressed curiosity about the explanation for this statement of the arbitrator’s disdain. 337 F.Supp.2d at 886 n. 23.

Susman Godfrey and the Arbitrator

Positive Software searched for an answer to this award and found a prior relationship between counsel for New Century, the Susman Godfrey law firm, and the arbitrator, Peter J. Shum, a member of the Arnold White & Durkee firm. These two prominent law firms in Houston both represented Intel in its protracted patent litigation with Cyrix.[5] Susman Godfrey began the representation of Intel in August 1991, with Stephen Susman, Terrell Oxford, and Ophelia Camina appearing. Peter Shurn joined the team in September *290 1992. He was listed thereafter with Sus-man, Oxford, and Camiña on docket sheets, motions, pleadings, and briefs.
The only response from Susman God-frey or New Century is a statement by Ophelia Camiña that her involvement with the Intel litigation began in 1991 and ended in 1992. But her name and that of Shurn appeared together on multiple pleadings between September 1992 and June 1993. Camiña is shown with Shurn, Susman, and Oxford on a trial motion filed January 19, 1993. And the four appeared together on motions and Intel’s notice of appeal filed in 1993. She also appears with Susman Godfrey and Arnold White & Durkee in the list of counsel on an opinion in 1994.
These lawyers were not inactive participants in the Cyrix litigation. One letter was found written by Stephen Susman to opposing counsel detailing the witnesses Intel intended to call at trial, and a copy of the letter went to Peter J. Shurn.
There is no explanation of this relationship from Shurn or Terry Oxford or any member of Susman Godfrey other than Camiña. The district court said that the fact that Camiña’s name remained on pleadings and court records, for years after she claimed to have ended her participation, itself gives the appearance of impropriety. Id. at 885.
When Shurn was being considered to arbitrate this dispute, he was told the names of counsel and told of the importance of disclosing any relationship with them. He signed a disclosure for the American Arbitration Association saying that he had nothing to disclose of past relationship with the parties or their counsel, “direct or indirect, whether financial, professional, social or of any other kind.” He was further instructed: “If any relationship arises during the course of the arbitration, or if there is any change ... it must also be disclosed.” When Shurn was appointed he was asked: “Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work?” He checked: “I have nothing to disclose.” And he signed an oath that he would act in accord with the rules of the American Arbitration Association.
The majority opinion portrays this relationship as trivial by reducing the record to Gamma’s statement that she did no work with Shurn. The district court had a different picture of the relationship, one that would have been remembered if Shurn or the other lawyers had given any thought to it, and certainly would have prevented Positive Software from resting its case with Peter Shurn.
Positive Software asked the district court for more discovery of the relationship between the arbitrator and the Sus-man Godfrey firm, but this request was not granted because the record had already established a failure to disclose a relationship requiring vacatur under the rule of Commonwealth Coatings.
Positive Software has also asked the courts to allow the dispute now to be tried in the good hands of the judiciary, because it cannot afford the expense of another arbitration. Anyone familiar with the experience of Positive Software will understand that request. Further, one will understand the wisdom of the Supreme Court’s ruling in Commonwealth Coatings. And, finally, one would follow that ruling and affirm the judgment vacating this arbitration award.

. Commonwealth Coatings Corp. v. Cont’l Cas. Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

. Commonwealth Coatings Corp. v. Cont’l Cas. Co., 382 F.2d 1010 (1st Cir.1967).

. Apperson, 879 F.2d at 1358 n. 19; Morelite Constr. Corp., 748 F.2d at 83; Merit Insurance Co., 714 F.2d at 681-82; Middlesex Mutual Ins. Co., 675 F.2d at 1200.

. Perhaps the rule should be different when disclosure of all relationships is expressly required to be made at the outset. And perhaps some allowance should be made for a three *289 member panel of arbitrators, as distinguished from the selection of a single arbitrator by the parties.
The Supreme Court in Commonwealth Coatings derived the statutory authority for vacating the award on the grounds of evident partiality or the use of undue means. 9 U.S.C. § 10. It might also be said that an arbitrator who fails to make a significant disclosure is guilty of "misbehavior by which the rights of any party have been prejudiced.’’ § 10(a)(3).

. Cyrix Corp. v. Intel Corp., 879 F.Supp. 666 (E.D.Tex.1995); Cyrix Corp. v. Intel Corp., 879 F.Supp. 672 (E.D.Tex.1995); Cyrix Corp. v. Intel Corp., 803 F.Supp. 1200 (E.D.Tex.1992).